UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08cv609

| | |
|---|---|
| ROBIN L. CURRY, ) | |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| PHILIP MORRIS USA, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on Defendant's motion to dismiss and its supporting memorandum of law (Doc. Nos. 7 & 8) filed by Defendant Philip Morris USA, Inc.; Plaintiff's Response (Doc. No. 10); and Defendant's Reply and Notice of Subsequently Decided Authority (Doc. Nos. 12 & 13). For the reasons stated below, Defendant's motion to dismiss (Doc. No. 7) will be **GRANTED**.

**I. BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff's Amended Complaint (Doc. No. 4) makes the following allegations the Court finds relevant to her subsequent claims for relief: Plaintiff, an African-American woman, began her employment with Defendant in 1986, at its Carbarrus Facility in Concord, North Carolina. She was promoted twice: first in 1991 to the position of "Material Specialist," and then in 1994 to the position of "Front Line Leader." In this position, Plaintiff "supervise[d] hourly personnel and manage[d] the process flow of tobacco."

Plaintiff performed her duties in this position as a "conscientious employee who took pride

in performing her job with the highest level of professionalism" until February 5, 2007, when she attended a meeting at the request of Shelby Belk, her supervisor, and Paul Coakly, Director of Human Resources at the Carbarrus Facility. The purpose of the meeting was to discuss a "floater day" of vacation leave she had approved for Danny Billings, one of Plaintiff's subordinates. Billings had missed work on January 23, but did not submit to Plaintiff a form requesting a floater day until after his absence. Plaintiff signed the form and back-dated it to read January 19, so that Billings would avoid disciplinary action for missing work without first requesting leave. Plaintiff admitted that she approved the floater request knowing that it was back-dated and, in violation of protocol, and failed to review Billings's attendance record before granting him a floater day. Plaintiff admitted to her supervisors that her failure to review Billings's attendance record violated company policy. Plaintiff explained to Belk and Coakley, however, that back-dating the form was proper because it accurately reflected the day Billings had made a verbal request to another supervisor, and Defendant generally condoned back-dating in those circumstances. Subsequently, Belk suspended Plaintiff pending a full investigation.

On February 9, 2007, Coakley contacted Plaintiff and asked her to return to the Carbarrus Facility. Upon her arrival, a security guard instructed Plaintiff to drive to a side parking lot. There, security personnel searched Plaintiff's car while she and a co-worker observed. At the conclusion of the search, Belk informed Plaintiff that the investigation was complete and she had been terminated for falsifying company documents. Plaintiff was told she would receive a written notice of her termination but never received one.

Plaintiff filed a formal charge with the EEOC on June 15, 2007, alleging discrimination based on race and gender. She received a "right-to-sue notice" from the EEOC on September 29,

2008. Proceeding pro se, Plaintiff filed a Complaint (Doc. No. 1) in federal court on December 29, 2008. Plaintiff thereafter filed an Amended Complaint (Doc. No. 4) claiming the following as causes of action: (1) race and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.; (2) defamation; and (3) invasion of privacy. (Id. ¶ 23 & 26).[1] Plaintiff's Amended Complaint seeks various forms of relief, including her reinstatement with back pay, compensatory and punitive damages, and attorney's fees. (Id. at 12).

On March 3, 2009, Defendant filed the instant motion and supporting memorandum (Doc. Nos. 7 & 8) to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6). Therein, Defendant moves to dismiss Plaintiff's Title VII claims on the ground that her allegations fail to state a plausible claim for relief. (Doc. No. 8 at 3-4).[2] Defendant also moves to dismiss Plaintiff's state law claims on the following grounds: (1) that Plaintiff's claim for defamation is barred by North Carolina's one-year statute of limitations; and (2) that Plaintiff's claim

---

[1] Counts One, Two, Three, and Six of Plaintiff's Amended Complaint are the following fact allegations that Plaintiff characterizes as cognizable claims for relief: (1) Plaintiff did not falsify company documents; (2) Defendant neglected to provide adequate training; (3) Defendant breached its promise to send Plaintiff a letter stating her reason for dismissal; and (4) Defendant conducted a faulty and improper investigation. (Doc. No. 4: Am. Compl. ¶¶ 20-22, 24). These are not claims for relief under federal or state law; at most, they attempt to provide factual support for the claims Plaintiff has already alleged for discrimination, defamation, and invasion of privacy. Accordingly, these counts will be dismissed without further discussion.

[2] Defendant also argues for dismissal based on Plaintiff's failure to plead a prima facie case of disparate treatment under the burden-shifting framework for disparate treatment claims under Title VII established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). (Doc. No. 8 at 4-5). It appears that Defendant has since abandoned this argument, as its subsequent pleadings (Doc. Nos. 12 and 13) focus only on whether Plaintiff's claim is plausible. To the extent, however, that Defendant has not abandoned this argument, the Court finds it unpersuasive. Although Plaintiff must plead facts establishing the elements of a claim under Title VII, Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003), she need not commit to a particular burden-shifting framework when filing her complaint. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511-12 (2002).

for invasion of privacy fails, as a matter of law, to allege an intrusion into her privacy that a reasonable person would consider highly offensive. (Id. at 6-8).[3] Plaintiff responded (Doc. No. 10), alleging new facts in support of her Title VII claims. (Id. at 2-3). Defendant then replied (Doc. No. 12), withdrawing in part its motion to dismiss Plaintiff's Title VII claims due to the new facts alleged in her response brief. (Id. at 1). Then, on June 26, 2009, Defendant filed a notice with the Court (Doc. No. 13) asserting that the recently-decided precedent governing dismissal under Rule 12(b)(6) set forth in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), warrants dismissal of Plaintiff's Amended Complaint in its entirety. (Id. at 2).[4] Thus, Defendant's motion to dismiss has been fully briefed and is now ripe for review.

## II. STANDARD OF REVIEW

To withstand a motion to dismiss under Rule 12(b)(6), the facts alleged in a complaint "must be enough to raise a right to relief above the speculative level" and must provide "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The United States Supreme Court recently emphasized that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1954. The Court "should view the complaint in the light most favorable to the Plaintiff," Mylan Labs., Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir.1993), and accept as true all well-pleaded

---

[3] Within its motion to dismiss, Defendant also moves for an award of attorney's fees. (Doc. No. 7 at 1). This should have been filed as a separate motion. See Local Civil Rule 7.1(C)(2). Because Defendant has improperly moved for attorney's fees, and fails to cite any Rule or statute under which they would be authorized, the Court will not consider awarding attorney's fees in conjunction with deciding the instant motion to dismiss.

[4] Absent any indication that Plaintiff has initiated discovery in reliance on Defendant's reply brief and is therefore prejudiced, the Court accepts Defendant's notice of subsequent authority as a renewed motion to dismiss Plaintiff's Title VII claims under Rule 12(b)(6).

factual allegations in the complaint, Swierkiewicz, 534 U.S. at 508, n. 1. The Court need not, however, "accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir.2008).

A motion to dismiss pursuant to Rule 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N. C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992), cert. denied, 510 U.S. 828 (1993) (citing 5A C. Wright & A. Miller, Federal Practice and Procedure § 1356 (1990)). Because Plaintiff is proceeding pro se, the Court construes her pleadings liberally. Boag v. MacDougall, 454 U.S. 364, 365 (1982); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). Nevertheless, to survive dismissal, a pro se plaintiff must still "plead factual matter that permits the court to infer more than the mere possibility of misconduct." Dolgaleva v. Va. Beach City Pub. Sch., No. 08-1515, 2010 WL 325957, at *6 (4th Cir. Jan. 29, 2010) (unpublished) (internal quotations omitted).

### III. DISCUSSION

#### A. Plaintiff's Title VII Claims

Plaintiff's Title VII claims are premised on an allegation that the disciplinary action taken against her by Defendant amounted to disparate treatment because of her race and gender. (Doc. No. 4: Am. Compl. ¶¶ 21 & 26). Title VII makes it "an unlawful employment practice for an employer . . . to discharge . . . any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "The ultimate question in every disparate treatment case is whether the plaintiff was the victim of intentional discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 135 (2000). Plaintiff's Amended Complaint offers little more than

conclusory allegations to support an inference that her termination was the result of intentional discrimination based on her race or gender:

> It is believed Defendant had advance knowledge that an established practice of discrepancies existed throughout the department in regards to filling out a floater day vacation form. However[,] focus was placed on Plaintiff's actions [resulting in] disparate treatment and discipline. It should be duly noted that no discipline was taken against similarly situated employees in an unprotected class.

(Id. ¶ 21). Additionally, Plaintiff alleges that Dewayne White, a white male, replaced her as the new Front Line Leader at the Carbarrus Facility after her termination. (Id.).

Although Plaintiff concludes that her termination resulted in "disparate treatment," she fails to allege specific facts explaining how disparate treatment actually occurred. Plaintiff does not identify the "similarly situated employees" outside of her protected class, nor does she describe the alleged misconduct for which these individuals received no disciplinary action. Thus, these allegations are exactly the kind of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that are not entitled to a presumption of truth when testing the sufficiency of Plaintiff's Amended Complaint. Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 555).

Plaintiff does, however, attempt to set forth additional facts supporting her Title VII claims in her response (Doc. No. 10) to Defendant's motion to dismiss. Therein, Plaintiff alleges that no written policy existed governing the procedure by which employees in her position were to review and approve requests for floating vacation days. (Id. at 2). In lieu of a written policy, Plaintiff specifically identifies several "unwritten procedures" governing the approval of floating vacation day requests that she and other employees recognized as "standard practice." (Id.). As a result, Plaintiff alleges that back-dating Billings's request was a standard practice that Defendant often condoned.

(Id.). Additionally, Plaintiff alleges that a subordinate employee witnessed Dewayne White, Plaintiff's replacement at the Front Line Leader position, "willingly falsify company documentation." (Id. at 2-3). The employee reported White's misconduct to Belk, but no disciplinary action resulted, and the employee was told to "never say anything about the situation again." (Id. at 3). Unlike the wholly conclusory allegations contained in Plaintiff's Amended Complaint, these additional allegations are sufficiently plead such that they are accepted as true against Defendant's motion to dismiss. Swierkiewicz, 534 U.S. at 508 n. 1; Mylan Labs., 7 F.3d at 1134.

But even assuming their truth, these new allegations are insufficient to "nudge" Plaintiff's Title VII claims "across the line from conceivable to plausible." Iqbal, 129 S. Ct. at 1951 (quoting Twombly, 550 U.S. at 570). At most, Plaintiff's additional allegations establish that Defendant's policies were sometimes arbitrarily enforced, and on one occasion a similarly-situated employee outside of Plaintiff's protected class may have received more lenient treatment for comparable misconduct.[5] Although not inconsistent with a theory of discrimination, these additional allegations fall short of plausibly suggesting that Plaintiff's race or gender was indeed a motivating factor behind the decision to terminate her employment. See Twombly, 550 U.S. at 545 (requiring allegations "plausibly suggesting," not "merely consistent with," a cause of action); see also Reeves, 530 U.S. at 135(intentional discrimination is the "ultimate question" in any disparate treatment case). By Plaintiff's own admission, she violated clear and unambiguous company policy by failing to check Danny Billings's attendance history before granting him an additional floating vacation day. (Doc.

---

[5] Plaintiff's allegation that Dewayne White, a white male, received no disciplinary action for "willingly falsify[ing] company documentation" is sufficiently vague so that the Court is unable to determine whether it alleges misconduct that is more or less severe than that which resulted in Plaintiff's termination.

No. 4: Am. Compl. ¶ 14). Common sense dictates that in light of this fact, the Court can draw no more than the "mere possibility" of discrimination from the other facts alleged in Plaintiff's Amended Complaint and response to Defendant's motion to dismiss. Iqbal, 129 S. Ct. at 1950; Twombly, 550 U.S. at 557. Thus, Plaintiff has failed to plausibly show that she is entitled to relief under Title VII, and her claims for gender and race discrimination will be dismissed.

### B. Plaintiff's State Law Claims

Plaintiff makes a general allegation that her termination process resulted in defamation of character and invasion of privacy. (Doc. No. 4: Am. Compl. ¶ 23). Both of these state law claims are based on the search of Plaintiff's automobile performed by Defendant's security personnel on February 9, 2007. (Id.). Plaintiff alleges that this search was performed without her permission and in front of one of her co-workers. (Id.). She further alleges that security personnel searched the car itself, as well as her personal belongings in the car, including her purse. (Id.). Plaintiff alleges that this search conveyed the "negative message" to onlookers that Plaintiff was "dishonest and not to be trusted." (Id.).

1. *Defamation*

Under North Carolina law, "[i]n order to recover for defamation, a plaintiff must allege that the defendant caused injury to the plaintiff by making false, defamatory statements of or concerning the plaintiff, which were published to a third person." Boyce & Isley, PLLC v. Cooper, 568 S.E.2d 893, 897 (N.C. App. 2002). "The term defamation includes two distinct torts, libel and slander. In general, libel is written while slander is oral." Iadanza v. Harper, 611 S.E.2d 217, 222 (N.C. App. 2005) (quoting Tallent v. Blake, 291 S.E.2d 336, 338 (N.C. App. 1982)). Claims for defamation must be brought within one year after publication of the allegedly defamatory statement. N.C. Gen.

Stat. § 1-54(3) (concerning libel and slander); Gibson v. Mut. Life Ins. Co. of N.Y., 465 S.E.2d 56, 58 (N.C. App. 1996) ("The statute of limitation for defamation is one year under N.C.Gen.Stat. § 1-54(3) . . . .").

Plaintiff fails to identify an allegedly defamatory statement published by Defendant. To the extent that Plaintiff alleges that the search itself was defamatory, non-verbal conduct is generally immune from claims of defamation. See Shillington v. K-Mart Corp., 402 S.E.2d 155, 159 (N.C. App. 1991) ("Slander, generally, is the speaking of base or defamatory words which tend to prejudice another in his reputation, office, trade, business or means of livelihood.") (emphasis added). Having failed to plead this essential element, Plaintiff cannot proceed on her claim of defamation. Moreover, even assuming arguendo that the search of her automobile was a potentially defamatory "statement," Plaintiff did not file her initial Complaint (Doc. No. 1) until December 29, 2008, over one year after the search occurred on February 9, 2007. Thus, her claim is also barred by the statute of limitations. N.C. Gen. Stat. § 1-54(3); Gibson, 465 S.E.2d at 58. Because Plaintiff fails to allege the existence of a defamatory statement published by Defendant, and her claim is barred under the statute of limitations, Plaintiff's claim for defamation will be dismissed.

2.  *Invasion of Privacy*

North Carolina law recognizes a limited cause of action for invasion of privacy against a defendant who "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, . . . if the intrusion would be highly offensive to a reasonable person." Miller v. Brooks, 472 S.E.2d 350, 354 (N.C. App. 1996) (quoting Smith v. Jack Eckerd Corp., 400 S.E.2d 99, 100 (N.C. App. 1991)). "Generally, there must be a physical or sensory intrusion or an unauthorized prying into confidential personal records to support a claim for

invasion of privacy by intrusion." Broughton v. McClatchy Newspapers, Inc., 588 S.E.2d 20, 27 (N.C. App. 2003). If premised on a physical intrusion of the person, "[t]he level of offensiveness for this tort is higher than the offensive touching required for battery." Smith, 400 S.E.2d at 100.

Plaintiff does not allege that Defendant's security personnel performed a search of her person, nor does she allege that any confidential records were discovered during the search. None of Plaintiff's allegations suggest that the search itself was performed in a particularly intrusive manner, let alone in a manner a reasonable person would find "highly offensive." Miller, 472 S.E.2d at 354. As with her claim for defamation, Plaintiff's main objection to the search on privacy grounds appears to be that it conveyed a negative message that she was not be trusted. (Doc. No. 4: Am. Compl. ¶ 23(c)). Any message the search might have conveyed is wholly irrelevant, however, as North Carolina law does not recognize a tort for invasion of privacy through portrayal in a false light. Broughton, 588 S.E.2d at 29 (citing Renwick v. News & Observer Pub. Co., 312 S.E.2d 405, 411-12 (N.C. 1984). Because she fails to plead facts supporting an inference that the search of her automobile was highly offensive to a reasonable person, Plaintiff's remaining state law claim for invasion of privacy will also be dismissed.

## IV. CONCLUSION

The Court has examined each of Plaintiff's claims and finds that none state a claim upon which relief may be granted.

**IT IS, THEREFORE, ORDERED** that:

1. The Defendant's Motion to Dismiss (Doc. No. 7) is **GRANTED**; and

2. The Plaintiff's Amended Complaint (Doc. No. 4) is **DISMISSED**.

Signed: February 4, 2010

*Robert J. Conrad, Jr.*
Robert J. Conrad, Jr.
Chief United States District Judge